**Lawrence CHERCHI, Plaintiff,**

v.

**MOBIL OIL CORPORATION,
Defendant.**

Civ. A. No. 87–2535.

United States District Court,
D. New Jersey.

May 18, 1988.

Anthony Mahoney, Mahoney & Mahoney, Westfield, N.J., for plaintiff.

Thomas F. Campion, Patrick M. Stanton, Ellen O'Connell, Shanley & Fisher, P.C., Morristown, N.J., for defendant.

## OPINION AND ORDER

LECHNER, District Judge.

This is an action alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Now before the court is defendant's motion for summary judgment.

*Facts*

The plaintiff in this action is Lawrence P. Cherchi ("Cherchi"). Plaintiff was born on October 17, 1943; he is now 44 years old. He currently resides in New Jersey. Cherchi is not married; he has no children. *See* Plaintiff's Answers to Defendant's Interrogatories ("Defendant's Interr."), No. 1; Cherchi Dep. at 4, 7.

The defendant is Mobil Oil Corporation ("Mobil"). Cherchi was employed by Mobil from 1967 until 1985 in various positions concerning special product sales, which involves the sale of refinery by-products to commercial accounts. *See* Defendant's Interr. Nos. 5–6; Cherchi Dep. at 24–30.

Cherchi's career with Mobil began in late 1966 when Cherchi applied in New York City for a position with Mobil. He was offered a position as a marketing trainee in Baltimore, Maryland, which he accepted on January 3, 1967. Cherchi moved to Baltimore within two to three months. *See* Defendant's Interr. No. 4. Between January 3, 1967 and July 1, 1985 Cherchi held the following positions with Mobil:

| Position | Dates | Location |
|---|---|---|
| Marketing Trainee | Jan. 1967—Jan. 1968 | Baltimore |
| Junior Marketing Representative | Jan. 1968—Jan. 1970 | Baltimore |
| Marketing Representative | Feb. 1970—Jan. 1976 | Baltimore |
| Senior Marketing Representative | Feb. 1976—Feb. 1979 | Baltimore |
| Office Manager | Feb. 1979—Dec. 1982 | Eastchester, N.Y. |
| Area Manager | Jan. 1983—Jul. 1985 | Worked out of his home in Leonia, N.J. |

*See id.* No. 5; *see also* Defendant's Moving Brief at 4.

Cherchi's last position with Mobil was as Area Manager for the Northeast from January, 1983 to July, 1985. In 1983 the Special Products Division was formed having an area manager in each of three nationwide key marketing areas: Northeast, Great Lakes, and Southwest/Southeast. According to Mobil, there were two objectives for this organization in 1983: (1) to concentrate and increase direct day to day supervision in key markets, and (2) to allow transfer of routine in-plant technical sup-

port work load then being provided by the Chief Engineer to the Area Managers. *See* 6/9/85 Letter from Theodore Ziegler, Special Products Division Manager ("Ziegler") to Cherchi (attached to Defendant's Answers to Plaintiff's Interrogatories) ("Plaintiff's Interr."); Ziegler Aff., ¶ 3.

From February 1, 1983 to June 29, 1985 the three area managers were Cherchi in the Northeast, Michael Vanderplow ("Vanderplow") in the Midwest, and Russ Griffith ("Griffith") in the Southwest.[1] The three area managers reported to Ziegler, who in turn reported to K.R. Fernlund ("Fernlund"), the Sales Department Manager. *See* Plaintiff's Interr. (attached chart demonstrating chain of command from 2/1/83 to 6/29/85).

In January or February of 1985, it was determined day to day supervision in the key markets and the routine in-plant technical support could adequately be handled by two area managers. Thus, Ziegler made a decision as to which of the area manager positions to eliminate, choosing to eliminate Cherchi's position. Ziegler Aff., ¶ 3.

Ziegler prepared evaluations of the performance of the three managers some time in January or February of 1985. *See* Ziegler Aff., Ex. A (evaluations are dated January (no date), 1985 and February 19, 1985). According to the evaluations, Griffith, who at the time was forty, achieved the best performance; he received an overall rating of CE — (clearly exceeds job requirements). *Id.* Cherchi, who was forty-one, and Vanderplow, who was thirty-four, both received overall ratings of MR (meets all job requirements and all expectations). The evaluations of Cherchi and Vanderplow

differed with respect to the specific comments given, and with respect to their ratings in certain areas: Vanderplow received higher ratings in Area Administration (MR versus MR —), Administration (MR + versus MR), Leadership/Development of Others (MR versus MR —), and Cherchi received higher ratings in Problem Solving/Decision Making (MR + versus MR) and Knowledge (MR + versus MR). *See id.*

In choosing to eliminate Cherchi's area manager position, Ziegler assertedly considered two factors: (1) Cherchi had the weakest job evaluation as area manager, and (2) Cherchi had covered the Baltimore territory for thirteen years where there was a vacancy in the position of Territory Manager. *Id.,* ¶ 4. As noted by plaintiff, Mobil does not indicate there was any geographical or market related reason for choosing to eliminate the Northeast position instead of one of the other two positions.

In early June, 1985, Cherchi was informed at a personal meeting with Ziegler and Fernlund of the decision to eliminate Cherchi's position and reassign him, effective July 1, 1985, to the Baltimore territory. *See* Cherchi Dep. at 33; Ziegler Aff., ¶ 5. Cherchi was told there would be no salary reduction and that his relocation costs would be paid by Mobil. Ziegler Aff., ¶ 5; *see also* 6/9/85 Letter from Ziegler to Cherchi (attached to Plaintiff's Interrs.). Apparently Cherchi expressed his unwillingness to relocate to Baltimore and asked about the possibility of receiving a termination allowance instead of being reassigned.[2]

---

1. On June 29, 1985, Cherchi was forty-one, Vanderplow was thirty-four, and Griffith was forty-one. As indicated, Cherchi was born on October 17, 1943; Vanderplow was born January 24, 1951 and Griffith was born June 28, 1944.

2. Cherchi sought benefits under a Termination Allowance Plan provided by Mobil. In 1985, the terms of this plan were as follows:

§ 1. Termination Allowance Plan
You are eligible for Termination Allowance benefits if you are a regular employee with one or more years of continuous service, and your employment is terminated by the Com-

pany for reasons other than those stated below.

\*   \*   \*   \*   \*   \*

You are not eligible for a Termination Allowance if termination occurs because:
— you are discharged for cause or behavior prejudicial to your employer,
— you resign,
— you retire,
— you are discharged as a result of governmental actions or recommendations or court decree or other similar action beyond the control of your employer, or

Ziegler called Cherchi many times to determine whether Cherchi had decided to accept the assignment in Baltimore. *See* Cherchi Dep. at 41–42. Cherchi did not make a definitive decision, however, until the end of June; he finally indicated he was unwilling to relocate because of personal and economic reasons. *Id.* at 42. On June 27, 1985, Cherchi asked Ziegler if there was any possibility of obtaining comparable employment in the New York area, but after researching the inquiry, Ziegler indicated no positions were available. *Id.* at 42–43; 7/8/85 Letter from Cherchi to Ziegler (attached to Plaintiff's Interrs.).

The reasons why Cherchi was unwilling to relocate were that: his mother was hospitalized with kidney problems; the woman with whom he was living and her daughter were unwilling to move, in part because the daughter was about to enter a nine month secretarial course for which the tuition had already been paid; much of his family resided in the greater New York area; he believed he would lose money if he sold his house in New Jersey; and he was disappointed because he perceived the Territory Manager position in Baltimore as a lesser position even though the salary was the same. *See* Cherchi Dep. at 11–12, 17, 18–19, 22–23, 35, 55. Although Cherchi now argues he was also unwilling to move because he was not given enough time to make the transition, he apparently did not request additional time nor did he indicate he would be willing to accept the position at some later time. *See id.* at 51.

By letter, dated July 1, 1985, Ziegler confirmed Cherchi's unwillingness to accept his new assignment, and notified Cherchi of his separation from Mobil effective June 29, 1985. By letter dated July 3, 1985, Mobil notified Cherchi of his benefits upon termination. On July 8, 1985, Cherchi responded indicating his interest in receiving employee benefits provided in cases of involuntary separation. By letter, dated July 15, 1985, Ziegler responded to Cherchi's inquiry. Ziegler explained that Cherchi's refusal to accept his position in Balti-

more was viewed as a resignation; thus, Cherchi was not eligible for the Mobil Termination Allowance. However, Ziegler indicated the Baltimore position was still available for Cherchi; Ziegler asked Cherchi to reconsider his rejection of the position and again asked Cherchi to accept the Baltimore position. *See* Letters, dated 7/1/85, 7/3/85, 7/8/85 and 7/15/85 (attached to Plaintiff's Interrs.). Cherchi declined the second offer of the Baltimore position.

Cherchi continued to seek the termination allowance from Mobil. On October 9, 1985, he wrote to the Benefit Plans Administration Department, and asked for a review of the determination that he was not eligible for the termination allowance. *See* Letter, dated 10/9/85 (attached to Plaintiff's Interrs.). Apparently Cherchi's efforts to obtain the termination allowance were unsuccessful.

On December 9, 1985, Cherchi filed a charge of age discrimination with the Equal Employment Opportunity Commission. Cherchi alleged he had been terminated because of his age and that the reorganization of the Special Products Department was a pretext for age discrimination. *See* EEOC Charge (attached to Defendant's Interr. No. 16.) The EEOC did not take favorable action on Cherchi's age discrimination charge. Cherchi Dep. at 64.

Cherchi instituted this action on June 25, 1987. The complaint contains two counts. The First Count alleges plaintiff was discharged on or about July 1, 1985, "without prior written notice or opportunity," after he had complained about job assignments and relocations which were forced upon him in order to obtain his involuntary termination. The complaint alleges Cherchi was ultimately replaced by less qualified employees who were under forty years of age. The First Count further alleges plaintiff's job performance was satisfactory, and that the realignment of areas and area managers was merely a pretext for age

---

— your employer arranges for other employment for you.

Affidavit of Carol Stevens, Employee Relations Advisor ("Stevens Aff."), ¶ 11 and Ex. B.

discrimination.[3] *See* Complaint, First Count, ¶¶ 2–5. Under this count plaintiff seeks reinstatement, or in the alternative, front-pay, as well as back pay.

The Second Count of the complaint alleges Mobil has engaged in a pattern or practice of reducing its salaried work force through terminations, lay-offs, and by coercing employees to retire or depart involuntarily. The Second Count alleges this practice has disproportionately affected Mobil's older employees, specifically those between the ages of forty and seventy. *Id.*, Second Count, ¶ 5. The Second Count further alleges Cherchi has suffered emotional distress as a result of his discharge and despite diligent efforts has not been able to find comparable employment. *Id.*, ¶¶ 7–8. Under this count plaintiff seeks reinstatement, back pay, as well as compensatory and punitive damages.

After conducting discovery, Mobil moves for summary judgment. Mobil argues it is entitled to summary judgment because Cherchi cannot establish a prima facie case of discrimination either under disparate treatment or disparate impact theories. Mobil argues further that even if plaintiff can establish a prima facie case, he has not raised a genuine issue of fact as to whether Mobil's proffered reasons for its actions are a pretext for age discrimination. For the reasons which follow, Mobil's motion for summary judgment is granted.[4]

*Discussion*

A. Summary Judgment Standard

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court's task in deciding the motion is not to "determine the truth of the matter but to determine whether there is a genuine [factual] issue" which can only be properly resolved by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although the summary judgment hurdle is difficult to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356–57 (emphasis in original, citations and footnotes omitted).

As the Court elaborated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted): "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." The Supreme Court went on to note in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) (footnote omitted): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it

---

**3.** The First Count also alleges Mobil discriminated against plaintiff in denying him severance pay. While plaintiff complains that Mobil should not have denied him the termination allowance, he does not appear to be alleging that Mobil's denial was improperly based on Cherchi's age. In fact, the employees who allegedly were treated preferentially with respect to separation benefits were well over forty years of age. *See* Stevens Aff., ¶¶ 7, 10.

**4.** Because I hold Mobil is entitled to summary judgment in its favor, I need not address Mobil's alternative argument that it is entitled to partial summary judgment with respect to monetary damages because plaintiff failed to mitigate his damages.

should be interpreted in a way that allows it to accomplish this purpose." Thus, once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e).

## B. Age Discrimination Claims

ADEA makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because of such individual's age....

29 U.S.C. § 623(a)(1). The proscription against age-based employment discrimination protects individuals who are forty years of age or older. 29 U.S.C. § 631(a).[5]

Under the ADEA a plaintiff must show his status in the protected class was a determinative factor in the employer's decision. The plaintiff need not prove the prohibited factor was the employer's sole consideration, but must prove that the factor made a difference. *See Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.) (ADEA), *cert. dismissed,* — U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Because "in most employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire, the [Supreme] Court [has] articulated a method of proof that relies on presumptions and shifting burdens of production." *Chipollini,* 814 F.2d at 897.

The three-prong allocation of the burdens of production was set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and restated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

> First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima

facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (citations omitted).

An ADEA defendant may prevail on a summary judgment motion in two ways. The defendant may show the plaintiff can raise no genuine issue of fact as to one or more of the elements of the prima facie case. The defendant may also offer a legitimate non-discriminatory reason for the actions taken and show the plaintiff can raise no genuine issue of fact as to whether the proffered reason is a mere pretext for age discrimination. *Spangle v. Valley Forge Sewer Authority,* 839 F.2d 171, 173 (3d Cir.1988) (quoting *Chipollini* ). In this case Mobil makes both contentions.

### 1. *Disparate Treatment*
#### a. Prima Facie Case

■ To establish a prima facie case of age discrimination in a case involving a reduction in force, a plaintiff must prove that (1) he belongs to the protected class, (2) he was performing satisfactorily in his present position and was actually or constructively discharged, (3) "while others not in the protected class were treated more favorably." *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

Mobil argues Cherchi cannot raise a genuine factual issue with respect to an essential element of the prima facie case. Cherchi can establish he belongs to the protected class of persons who are at least forty years of age. He can also show that although he was performing satisfactorily,

---

**5.** The ADEA previously protected only individuals who were at least forty years of age but less than seventy years of age. In 1986, the statute was amended to remove the age ceiling of seventy. Pub.L. 99–592 § 2(c)(1).

his position was eliminated whereas Vanderplow who was under forty remained employed as an area manager. Mobil argues, however, Cherchi cannot show he was constructively discharged.

In order to establish a constructive discharge, "the plaintiff must establish that the employer knowingly permitted conditions of discrimination so intolerable that a reasonable person would have felt compelled to resign." *Spangle*, at 173.

Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. ... "An employee may not be unreasonably sensitive to his working environment." ... Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from ... the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers [such that would compel a reasonable person to resign]. He is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

In this case, Mobil does not dispute the facts surrounding Cherchi's refusal of the Baltimore assignment because of his unwillingness to relocate. Mobil maintains, however, the circumstances which led Cherchi to refuse his position do not constitute the objectively intolerable conditions required to establish constructive discharge.

Cherchi argues that one of the circumstances which made his reassignment intolerable was that he was not given reasonable notice and was given little time in which to relocate. The record does not indicate, however, that Cherchi expressed a willingness to accept the position at some point in the future if he were given additional time to make the transition. Cherchi refused to accept the Baltimore position on two separate occasions. Cherchi told Ziegler at the end of June, 1985 he would not accept the position; he again refused the position in late July, 1985.

The other reasons why Cherchi assertedly found his reassignment intolerable were his perception that the Baltimore position was a lesser position and various personal reasons which made him unwilling to move. These circumstances, however, do not constitute the objectively intolerable conditions which must be present to establish constructive discharge. As indicated, Cherchi has the burden of coming forward with facts showing that Mobil "knowingly permitted conditions of discrimination so intolerable that a reasonable person would have felt compelled to resign." *Spangle*, at 173.

A reduction of an employee's supervisory duties does not constitute the intolerable conditions which are necessary to establish constructive discharge. For example, in *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114 (1st Cir.1977), the First Circuit indicated that loss of prestige or of supervisory duties is insufficient to support a finding of constructive discharge. The court explained that "[t]his sort of limited blow to one's pride or prestige does not provide reason enough to resign.... A more drastic reduction in the quality of working conditions is needed." *Id.* at 119–20.

In *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324–26 (2d Cir.1983), the plaintiff's responsibilities were changed with no reduction in her pay. *Id.* at 325. The court held "[n]o reasonable person would have found this a compulsion to resign." *Id.* at 326. The court held the plaintiff did not establish prima facie case of age discrimination and a verdict in favor of the employer should have been directed because the plaintiff did not establish she was constructively discharged. *Id.* at 324–26. The

court explained "Mrs. Pena's case in chief proved only that she strongly disagreed with the business judgments of [her employer].... [However, the] ADEA does not protect employees who resign in protest against business decisions of this type." *Id.* at 326.

In *Frazer v. KFC National Management Co.*, 491 F.Supp. 1099 (M.D.Ga.1980), *aff'd*, 636 F.2d 313 (5th Cir.1981), the plaintiff was offered "the next lower job without loss of pay or benefits," but after considering the offer, he refused to accept it. *Id.* at 1105. The court granted summary judgment in favor of the employer because the undisputed facts demonstrated the plaintiff was neither actually nor constructively discharged and thus, as a matter of law, the plaintiff had no ADEA claim against his employer. *Id.* at 1106. The court explained the ADEA was not intended to give the employees in the protected age group "the right to walk out and sue their employer because they dislike their changed job responsibilities." *Id.* at 1105.

Similarly, in this case Cherchi was offered a job which Cherchi perceived as a lesser position with less supervisory duties, but for which he would be paid the same salary. While Cherchi may have subjectively found this change too disappointing to tolerate, it does not constitute an intolerable circumstance which would compel a reasonable person to resign.

Cherchi also argues there were personal circumstances which made relocation an intolerable condition of his employment with Mobil. The Third Circuit standard for constructive discharge does not require proof of the employer's specific intent to obtain an employee's resignation, but rather that the employer knowingly permitted intolerable conditions of discrimination which would compel a reasonable person to resign. *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887–88 (3d Cir.1984). Nevertheless, plaintiff's personal circumstances do not constitute grounds for a claim that Mobil constructively discharged him.

In *Weihaupt v. AMA*, 46 F.E.P.Cas. 377, 380 (N.D.Ill.1988) [available on WESTLAW, 1988 WL 20050], the court recognized that the employee's cancer influenced his decision to opt for early retirement. The court noted, "an employee must sometimes choose a course of action within a limited context of relatively distasteful options," and emphasized an employer cannot be held responsible for the creation of an employee's health problems such as to constitute grounds for claiming constructive discharge. *See id.* Similarly, in this case Mobil cannot be held responsible for the health problems of Cherchi's mother, or for Cherchi's problems with his girlfriend and her daughter.

Apart from his personal circumstances and his perception of his changed responsibilities, the undisputed facts do not indicate Cherchi viewed relocation itself as an intolerable condition. Cherchi had worked and lived in the Baltimore area for thirteen years; he had some family in the area. *See* Cherchi Dep. at 25, 35. In his Career Interests Forms he had indicated a willingness to move to other domestic locations to take on positions which progressed his career. *See* "Employee Career Interests" Forms dated January 14, 1983 and January 10, 1985 (attached to Plaintiff's Interr.). In fact, Cherchi had moved three times when changing positions within the company. He moved from New York to Baltimore in 1967, from Baltimore to Eastchester in 1979, and when he became an area manager in 1983, he worked out of his home in Leonia. Furthermore, with respect to the financial costs of moving, it is undisputed that Mobil was to pay for Cherchi's moving costs if he accepted the Baltimore position.[6]

As gleaned from the parties' submissions, the undisputed facts do not establish Mobil knowingly permitted conditions of discrimination so intolerable that a reasonable person would be compelled to resign. Because Cherchi has not raised a genuine factual issue with regard to the requisite element of constructive discharge, he has

---

**6.** Cherchi's deposition testimony that he believed he would lose money if he sold his New Jersey home is uncorroborated and speculative. It does not constitute colorable evidence of an intolerable condition.

failed to carry his burden of establishing a prima facie case of age discrimination under the disparate treatment theory.

### b. Pretext

■ Even if Cherchi could show that he was constructively discharged and thus establish a prima facie case, Mobil would nevertheless be entitled to summary judgment because Cherchi has not satisfied his burden of showing that Mobil's proffered non-discriminatory reasons for its actions are a mere pretext for age discrimination. As the Third Circuit has emphasized, a plaintiff alleging disparate treatment under the ADEA bears the ultimate burden of persuasion on the central issue that his treatment was caused by purposeful discrimination. *See Chipollini*, 814 F.2d at 897; *Massarsky*, 706 F.2d at 117.

When the plaintiff makes out a prima facie case, an inference arises that discrimination occurred. The employer may then dispel the adverse inference by articulating some legitimate non-discriminatory reason for its treatment of the employee. Once the defendant has produced admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory actions, the presumption of discrimination drops from the case. Plaintiff must then show the defendant's proffered reason is a pretext for discrimination. *Chipollini*, 814 F.2d at 898; *Massarsky*, 706 F.2d at 118.

This burden merges with plaintiff's ultimate burden to persuade the court that he was the victim of intentional discrimination. *Chipollini*, 814 F.2d at 899–900; *Keller v. Bluemle*, 571 F.Supp. 364, 369 (E.D.Pa. 1983), *aff'd*, 735 F.2d 1349 (3d Cir.1984). The plaintiff may meet this burden either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence. "Therefore, to meet its burden on summary judgment, the defendant employer must show that the plaintiff will be unable to introduce either direct evidence of a purpose to discriminate, or indirect evidence of that purpose by show-ing that the proffered reason is subject to factual dispute." *Chipollini*, 814 F.2d at 898–899.

Mobil has carried its burden of articulating a legitimate nondiscriminatory reason for its decision to eliminate Cherchi's area manager position and to reassign him as manager of the Baltimore Territory. Mobil has submitted Ziegler's affidavit, in which Ziegler explains a business decision was reached that only two area managers were needed, and Ziegler chose to eliminate Cherchi's position because Cherchi had the weakest job evaluation and Cherchi had substantial experience related to the position which was open in Baltimore. Ziegler Aff., ¶¶ 3–4.

Because Mobil has carried its burden and has dispelled the inference of discrimination, the burden of production shifts again to Cherchi who at all times bears the ultimate burden of persuasion. Cherchi has not offered any direct evidence of intent to discriminate against him on the basis of his age. The only evidence Cherchi offers is his affidavit in which he addresses in a cursory manner Mobil's proffered explanation.

Cherchi does not attempt to show that the factors considered by Ziegler were not true; rather Cherchi appears to be suggesting that the proffered reasons were not sufficiently compelling to justify Mobil's actions. Cherchi asserts his overall performance was comparable to Vanderplow's and that he was not told at the June meeting his performance was a factor in choosing to eliminate his position. He also points out Mobil has not claimed there was any geographic reason for eliminating the Northeast area manager position. Cherchi also suggests Mobil's reasons were not compelling by asserting that he could have covered the Baltimore Territory by traveling from New Jersey whenever it was necessary.

Thus, while Cherchi argues Mobil's proffered reasons did not compel his reassignment, he has not come forward with any evidence tending to show the reasons which Mobil assertedly considered are pretextual or a fabrication or not worthy of credence.

Cherchi has not come forward with specific evidence sufficient to raise a genuine issue for trial.[7] *See Keller*, 571 F.Supp. at 369 (granting summary judgment because plaintiff failed to raise a genuine issue for trial whether defendant's proffered reasons were pretexts for age discrimination; court held plaintiff's arguments were irrelevant, unsupported by facts, or contradicted by undisputed evidence in the record); *Fick v. Canterbury Coal Co.*, 568 F.Supp. 927, 930–31 (W.D.Pa.1983) (granting summary judgment where plaintiff's evidence was insufficient to raise a genuine issue whether defendant's reasons were a pretext for age discrimination). Because Cherchi has failed to establish a prima facie case of discrimination under the disparate treatment theory, and has also failed to raise a genuine issue of fact as to whether Mobil's proffered explanation is a mere pretext, Mobil is entitled to summary judgment in its favor on the first count.

### 2. *Disparate Impact*

■ The disparate impact theory was developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). As the Supreme Court has noted, the ADEA and Title VII are parallel statutes because Title VII was the main inspiration for the language of the ADEA. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). Although there are differences in the statutes and in the nature of the discrimination they prohibit, their similarities have led ADEA courts to often borrow and apply Title VII analysis.

In recent years most courts of appeals have addressed disparate impact claims in ADEA cases and they have consistently approved, either directly or in dictum, the applicability of disparate impact analysis in the ADEA setting. *See Holt v. Gamewell Corp.*, 797 F.2d 36 (1st Cir.1986); *Geller v. Markham*, 635 F.2d 1027 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Laugesen v. Ana-*

*conda Co.*, 510 F.2d 307, 315 (6th Cir.1975); *Monroe v. United Air Lines*, 736 F.2d 394, 404 n. 3 (7th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985); *Leftwich v. Harris–Stowe State College*, 702 F.2d 686 (8th Cir.1983); *Palmer v. United States*, 794 F.2d 534 (9th Cir.1986); *Heward v. Western Elec. Co.*, 35 F.E.P.Cas. 807 (10th Cir.1984); *Allison v. Western Union Tel. Co.*, 680 F.2d 1318 (11th Cir.1982).

The Third Circuit has explicitly left open the question whether "a plaintiff can establish a violation of the [ADEA] by showing disparate impact alone." *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 120 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Nevertheless, district courts in the Third Circuit have held that disparate impact analysis may be applied in ADEA cases. *See, e.g., Reilly v. Prudential Property and Casualty Ins. Co.*, 653 F.Supp. 725, 729 (D.N.J. 1987); *E.E.O.C. v. Westinghouse Elec. Corp.*, 632 F.Supp. 343, 370 (E.D.Pa.1986); *E.E.O.C. v. Governor Mifflin School District*, 623 F.Supp. 734, 741 (E.D.Pa.1985).

■ As noted by the Third Circuit, a "plaintiff's initial burden with respect to a disparate impact claim is heavier than it is when disparate treatment is alleged." *Massarsky*, 706 F.2d at 120. To establish a prima facie case under the disparate impact theory, the plaintiff must show that the employer's facially neutral practice had a "significant discriminatory impact" upon members of plaintiff's protected class, in this case employees over forty. *See id.* (quoting *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982)). Unlike when making a disparate treatment claim, proof of discriminatory motive is not required to sustain a claim of disparate impact. *Geller*, 635 F.2d at 1031.

■ Once the plaintiff has established a prima facie case, the employer may defend by showing that the employment practice is justified by business necessity and is significantly related to successful perform-

---

7. Although plaintiff had sufficient opportunity to conduct discovery, he apparently declined to depose any current Mobil employees. *See* Defendant's Moving Brief at 2.

ance of the job for which the practice is used. *Massarsky*, 706 F.2d at 120; *Geller*, 635 F.2d at 1032. The plaintiff is then given an opportunity to show that the employer was using the practice as a mere pretext for discrimination. *Massarsky*, 706 F.2d at 120. For example, the plaintiff may show that other selection methods having less discriminatory effects would serve the employer's legitimate interest in competent performance of the job. *See Geller*, 635 F.2d at 1032.

The Third Circuit has emphasized that the employer's burden of justifying the employment practice does not arise until after the plaintiff has made out a prima facie case. *See Massarsky*, 706 F.2d at 120. The requisite discriminatory impact is frequently evidenced by statistics from which it may be inferred that the employer's employment practice significantly disadvantaged employees over forty years of age as compared with employees under forty. *See Geller*, 635 F.2d at 1032.

In this case, plaintiff has not offered sufficiently probative evidence to establish a prima facie case of disparate impact. Cherchi does not claim there were neutral criteria which were used to select employees which in turn had a disparate adverse impact on employees over forty years of age. Cherchi alleges Mobil adopted a general practice of reducing its salaried work force which has disproportionately affected its employees over forty years of age.

In his affidavit in opposition to this motion, Cherchi identifies Mobil's "cost containment" program as the source of the Mobil practices which he claims have had a discriminatory impact on employees over forty. Cost containment officially began as an organization-wide program in June of 1981. Apparently it was adopted in order for Mobil to remain competitive and profitable in the face of decreased petroleum demands and excess supply. There were four major elements of the cost containment program: (1) eliminating marginal business lines, consolidating activities, and streamlining operations; (2) reducing discretionary expenses; (3) focusing on administrative overhead; and (4) reducing head-

count through attrition, elimination, or reorganization. *See* "Mobil World," exhibit to Cherchi Aff. and Ex. 11 to Plaintiff's Final Pre-Trial Statement.

Although Mobil's cost containment program was company-wide, Cherchi apparently limits his claim of disparate impact to the Special Products Department. Specifically with respect to the area manager positions, Cherchi states in his affidavit that Griffith who is over forty is no longer an area manager and that the two area manager positions are now filled by men under forty. Cherchi Aff., ¶ 7.

Cherchi also asserts Mobil's cost containment program had a disparate impact on all the managers in the Special Products Department. Cherchi asserts that in or about 1979, the Special Products Department had approximately fifteen managers. Cherchi alleges disparate impact in that of the nine men known to him to be over forty years of age, all except one assertedly have "had their jobs eliminated or were retired." Cherchi further claims of the four men who have turned forty after 1979, three of them have been demoted or terminated. Cherchi Aff., ¶ 9.

The only evidence which plaintiff offers in support of his disparate impact allegations is a chart containing the names and ages of fifteen Special Product Department managers and outlining their "career paths" from 1979 to the present. *See* Attachment to Cherchi Aff. The chart prepared by Cherchi for the most part supports his specific allegations. Of the nine men listed as being over forty in 1979, four had their jobs eliminated, one was reassigned, two retired, one was demoted, and one remains in the same position. Of the four who, according to the chart, turned forty after 1979, one was terminated, one had his job eliminated, one was demoted, and only one was promoted.

The chart depicts the following overall picture. Thirteen of the men listed are currently over forty, one is under forty, and one name is listed without any indication of his age. Of the thirteen who are over forty, their current employment status is as follows: five had their jobs elimi-

nated, one had his job eliminated but was reassigned, one opted for early retirement, one retired, two were demoted, one was terminated, one remains in the same position and one was promoted. The employee who is under forty was demoted. The employee whose age is not listed was promoted.

Cherchi's testimony and the chart he prepared are not sufficiently probative evidence to establish a prima facie case of disparate impact. Cherchi offers no corroborating evidence to buttress the probative value of his testimony and chart. Courts have found such corroboration to be necessary especially when the evidence offered was prepared by a person with no statistical expertise and with a direct interest in the outcome of the case. *See Geller*, 635 F.2d at 1033.

Moreover, the chart Cherchi offers does not show the significant "differential impact on those within the protected class" necessary to implicate the ADEA. *See Massarsky*, 706 F.2d at 120–21. It is essential to make a showing that Mobil's "practices had a greater impact on protected individuals than on employees outside the protected age group." *Id.* at 121 n. 18; *see Pace v. Southern Railway System*, 701 F.2d 1383, 1388–89 (11th Cir.) (statistical analysis is only competent evidence of a pattern of discrimination if plaintiff proffers evidence of percentage of persons in the protected age group who were affected as compared to the percentage of persons outside the protected group who were af-

fected), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

Cherchi's chart is insufficient to show disparate impact. As indicated, the focus of Cherchi's allegations and evidence is the effect of Mobil's practices on the managers of the Special Products Department. At least thirteen of the fifteen men listed are currently over forty. Because almost all of the managers are in the protected class, a differential impact on the protected class has not been established. *See, e.g., Pace*, 701 F.2d at 1389 (in affirming grant of summary judgment in ADEA case where plaintiff's statistics were insufficient to establish a prima facie case, court pointed out "[i]f a substantial majority of the employee population of the department was composed of persons in the protected age group, the fact that 83% of those demoted were in the protected group is not by itself significant").

Moreover, plaintiff's evidence does not demonstrate members of the protected class were adversely affected by Mobil's alleged practices whereas members outside the class were not. Cherchi's chart does not indicate that Mobil's alleged practices did not affect employees under forty. In fact, according to Cherchi's chart, the one employee who is under forty has been demoted.

Furthermore, Cherchi makes no allegation that managerial positions in the Special Products Department are now filled by men under forty.[8] In fact, according to the chart, of the three employees who have not been adversely affected, one is over forty

---

8. As previously mentioned, Cherchi does allege that currently the two area manager positions are filled by men under forty. However, the Third Circuit and other courts have consistently held that an adverse effect on a few employees is not sufficient to establish a disparate impact on the protected class. *See Massarsky*, 706 F.2d at 121 ("An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact."); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987) (statistics based on the departure of seventeen people lack probative value in part because of the small size of the sample); *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir.1987) (plaintiff failed to establish prima facie case of disparate impact under ADEA and summary judgment properly granted because no statisti-

cal inferences could be drawn based on one applicant over 40); *Holt v. Gamewell Corp.*, 797 F.2d 36, 38 (1st Cir.1986) (court affirms grant of summary judgment and notes that an adverse effect on a single or a few employees does not create a prima facie case of disparate impact under ADEA); *Pace*, 701 F.2d at 1389 (court affirms grant of summary judgment in ADEA case where plaintiff's statistics were insufficient to establish a prima facie case; the statistics offered were deficient, among other reasons, because the sample size of 12 was too small to be significant); *see also Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 194 (3d Cir.1979) (with respect to disparate impact claim under Title VII, court notes five black union members were "too few to establish a meaningful statistical case").

and remains in his managerial position, another is over forty and has been promoted, and another employee has been promoted, but his age is not listed. Thus, the chart offered by Cherchi does not indicate that being over forty was a barrier to being retained or promoted, or that being under forty insulated an employee from being demoted.

Plaintiff's submissions fail to demonstrate the significant differential impact on the protected class necessary to establish a disparate impact claim under the ADEA. Because Cherchi has not offered evidence sufficiently probative to establish a prima facie case of age discrimination through a Mobil practice having a disparate impact on employees over forty, Mobil is entitled to summary judgment on the second count of the complaint.[9]

### Conclusion

Cherchi has failed to establish a prima facie case of age discrimination either under disparate treatment or disparate impact theories. Consequently, summary judgment is granted in favor of Mobil on the first and second counts of the Complaint. This action is dismissed with prejudice.

---

[9]. The parties in this case have already submitted their Final Pre–Trial Statements ("FPS") in which they set forth with particularity each fact each party intends to prove at trial, together with a list of witnesses, documents, or portions of discovery which will be offered to prove those facts. As noted in Cherchi's FPS: "Plaintiff Lawrence Cherchi understands that this statement shall preclude it from offering at trial any witnesses, facts or evidence supporting such facts that are not set forth herein, save for facts introduced solely for impeachment or rebuttal purposes, or which respond to proofs of plaintiff or the defendant that could not be reasonably anticipated by Lawrence Cherchi, except for good cause shown." Plaintiff's FPS at 1. *See Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 478 F.Supp. 889, 949–50 (E.D.Pa.1979) ("Except for good cause shown, the parties are precluded from offering at trial any facts or evidence supporting such facts which have not been disclosed in the FPS."); *see also* FPS Order, filed November 20, 1987, at 3. Plaintiff does not indicate in his FPS that he intends to offer any other statistics or expert analysis with respect to his allegations of disparate impact.