**Corrine DARNELL, Plaintiff,**

v.

**CAMPBELL COUNTY FISCAL COURT, Defendant.**

**Civ. A. No. 88–112.**

United States District Court,
E.D. Kentucky,
Covington Division.

March 6, 1990.

Kurt A. Philipps, Deters, Benzinger & Lavelle, Covington, Ky., for plaintiff.

Jeffrey C. Mando, Adams, Brooking, Stepner, Woltermann & Dusing, Covington, Ky., Paul H. Twehues, Jr., Twehues & Verst, Newport, Ky., for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

### Background

This is an employment discrimination action against Campbell County, Kentucky. Plaintiff originally alleged that she was discharged from her position as secretary-clerk on account of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., on account of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and in violation of her due process and first amendment rights under 42 U.S.C. § 1983.

This matter is before the court on the parties' supplemental memoranda to defendant's motion for summary judgment, addressing the issue of whether the lateral transfer of which plaintiff complains constitutes an "adverse employment action."

### Facts

The undisputed material facts in this case are that plaintiff was informed that her secretarial position in Newport, Kentucky with the Campbell County Fiscal Court, was being abolished due to budgetary reasons. Plaintiff lives in Newport, Kentucky. For personal reasons, she was in the habit of going home for lunch. She was offered a transfer to a secretarial position in Alexandria, Kentucky with the Department of Disaster and Emergency Services. Plaintiff attempts to claim that she was terminated from County employment, but there is no doubt the action amounted to a transfer. A letter from the Fiscal Court to plaintiff, dated September 3, 1987, provides in full:

"The Campbell County Fiscal Court has been advised that the position of secretary/clerk in the Campbell County Fiscal Department is not needed. Based on the recommendation of the Fiscal Director, the Court will be abolishing this position which you presently are filling.

"The Campbell County Fiscal Court is in need of an Executive Secretary for the Disaster Emergency Services Department. You would be entitled to apply for this position. If you accept this position, you will be *transferred to DES with no change in your grade level or salary.*

"The Court plans to abolish the secretary/clerk position in the Fiscal Court Department as of September 30, 1987. The Executive Secretary position in DES department will begin on October 1, 1987.

"Please advise Melissa Williams, the Personnel Director, of your decision no

later than September 23, 1987 if you plan on accepting this position.

"We the Campbell County Fiscal Court feel very positive about your *transfer.*" Doc. 18, Defendant's Motion for Summary Judgment, Exhibit 1 (emphasis added).

Plaintiff's previous position and the Alexandria position which she was offered had the same duties and responsibilities, salary, and grade level. Plaintiff drives to work. The court takes judicial notice that the drive from Newport to the building where plaintiff would have worked in Alexandria is approximately ten (10) miles and takes approximately twenty (20) minutes to reach by car, even in heavy traffic. Thousands of people make this commute every day. It probably would not have been possible, however, for plaintiff to go home for lunch.

Plaintiff did not apply for the position in Alexandria. A letter from the Campbell County Judge–Executive advised plaintiff.

"As you know the position of Secretary/Clerk in the Department of Fiscal Affairs has been terminated as of 10–7–87, and you were given the opportunity to apply for a different position. It is our understanding that you have decided not to apply for any other position with the Fiscal Court even though your salary would remain unchanged.

"Therefore, since you have elected not to take another position with the Fiscal Court and your present position has been terminated, your employment with the Fiscal Court will be terminated as of midnight 10–7–87.

"If you change your mind between now and then, please contact us immediately." *Id.,* Exhibit 2.

Plaintiff claims she did not apply for the position because she believed it was a "sham." She believed the new position would be abolished after she accepted it, because there was no need for the position or the money to fund it. However, plaintiff admits in her deposition that, as indicated by the letters, "I thought that if I wanted the job, then it would be there" beginning the day after the date the abolition of the Fiscal Court position became effective. (Darnell Depo., pp. 67–68).

Plaintiff argues that there was a hidden agenda in all this. She is vague as to exactly what the surreptitious motive was, sometimes arguing that the present County officials wanted to terminate her because she had been employed years before as the confidential secretary to the previous County Judge/Executive whom the present County Judge/Executive had defeated in an election. At other times, plaintiff argues that the transfer was motivated by a desire to get rid of older employees.

An essential element for either theory of recovery, however, is an "adverse employment action" toward plaintiff.

By previous Order, dated October 4, 1989, this court, among other things, granted defendant's motion for summary judgment on plaintiff's Title VII, due process, and freedom of speech claims. Those claims were dismissed. This left the age and freedom of association claims. The parties were ordered, among other things, to file supplemental memoranda on the issue of whether defendant's conduct constitutes an "adverse employment" action, which they did.

### *"New Era" Summary Judgments*

Plaintiff argues that summary judgment is inappropriate in this case because the defendants' state of mind is at issue and because there is a genuine issue of material fact whether the position she was offered in Alexandria was a "sham."

Recently, the United States Court of Appeals for the Sixth Circuit, in *Street v. J.C. Bradford and Company,* 886 F.2d 1472 (6th Cir.1989), discussed the "new era" of summary judgments introduced by the 1986 Supreme Court decisions.

The court summarized the characteristics of the "new era" as follows:

"1. Complex cases are not necessarily inappropriate for summary judgment.

"2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

"3. The movant must meet the initial burden of showing 'the absence of a gen-

uine issue of material fact' as to an essential element of the non-movant's case.

"4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

"5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'

"6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

"7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

"8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

"9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

"10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'"

*Id.*, 886 F.2d at 1479–80 (footnotes omitted). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Applying these criteria to the case at bar, the court finds that there is no more than a scintilla of evidence—if that—supporting an essential element of plaintiff's case. Therefore, a summary judgment is proper, even though defendants' state of mind may be at issue to some extent.

### The Lateral Transfer Was Not An "Adverse Employment Action"

■ The issue of whether defendant took an adverse employment action with respect to plaintiff is a threshold issue plaintiff must establish for all of her employment claims. *E.g., Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987), citing *Ferguson v. E.I. duPont de Nemours & Co., Inc.*, 560 F.Supp. 1172, 1201 (D.Del.1983); *Haimovitz v. United States Dept. of Justice*, 720 F.Supp. 516, 525–27 (W.D.Pa.1989); *Reichert v. Draud*, 511 F.Supp. 679, 682 (E.D.Ky.1981), *aff'd* 701 F.2d 1168 (6th Cir.1983).

It was sheer speculation on the part of the plaintiff that the Alexandria job was a "sham," because she never accepted the transfer. The letters quoted above unequivocally establish that plaintiff was offered the Alexandria position, and it is undisputed that she believed the job was hers had she indicated to defendant that she wanted it. Despite the assurances by defendant, and plaintiff's own belief, that the Alexandria job was hers for the taking, plaintiff refused to accept the offer.

Unless the transfer was an adverse employment action, *per se*, plaintiff had the obligation to give it a try and could not speculate that the defendant was acting in bad faith.[1]

---

1. *Cf. Arnett v. Morton Salt Co.*, 895 F.2d 1412 (6th Cir.1990) (per curiam) (plaintiff had obli-

The clear trend of authority is to require that a transfer with no change in wages or benefits amount to a "constructive discharge" to be actionable as an "adverse employment action." *Greenberg v. Kmetko*, 840 F.2d 467, 475 (7th Cir.1988) (en banc); *Lewandowski v. Two Rivers Public Sch. Dist.*, 711 F.Supp. 1486, 1497 (E.D. Wis.1989); *Crawford v. ITT Consumer Financial Corp.*, 653 F.Supp. 1184, 1187 (S.D.Ohio 1986); *Walter v. KFGO Radio*, 518 F.Supp. 1309, 1313–14 (D.N.D.1981); *Cf. Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883 (7th Cir.1989) (change must be "materially adverse").

Of course, transfer over a great distance can amount to a constructive discharge. *Cf. Christensen v. Equitable Life Assurance Soc'y*, 767 F.2d 340, 343 (7th Cir. 1985), *cert. denied* 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). However, even this is not always true. *E.g., Haimovitz*, 720 F.Supp. at 526–27; *Cherchi v. Mobil Oil Corp.*, 693 F.Supp. 156, 162–63 (D.N.J.), *aff'd without opinion* 865 F.2d 249 (3d Cir.1988); *Wehrly v. American Motors Sales Corp.*, 678 F.Supp. 1366, 1379–80 (N.D.Ind.1988).

■ Here, the plaintiff was in effect offered a transfer to the position in Alexandria, which had the same duties, pay, and benefits. The court holds as a matter of law the fact that a short 20 minute drive was required did not convert the transfer to a "constructive discharge."

■ The mere subjective preferences of the plaintiff—such as the desire to go home for lunch—are insufficient to turn a transfer of location into a constructive discharge. A constructive discharge must be based on objective criteria that would create intolerable conditions that a reasonable person could not be expected to bear. *Yates*, 819 F.2d at 636–37; *Cherchi*, 693

F.Supp. at 163. Millions of working people are unable to go home for lunch.

■ A transfer involving loss of prestige or an objectively demeaning change of working conditions—such as removal from a private office—can amount to a constructive discharge. *Collins v. State of Illinois*, 830 F.2d 692, 704 (7th Cir.1987). But there is no scintilla of evidence of any such factors in this case. Subjective considerations are insufficient. *Murray v. Sears, Roebuck and Co.*, 722 F.Supp. 1500, 1506–07 (N.D.Ohio 1989). "Although plaintiff may have concluded that ... a relocation would adversely affect his personal life, the ADEA only addresses those business decisions which adversely affect one's employment opportunities." *Haimovitz*, 720 F.Supp. at 526.[2]

■ Barring unusual circumstances, proof of which is totally lacking here, a transfer at no loss of title, pay, or benefits does not amount to a constructive discharge or adverse employment action. *Greenberg*, 840 F.2d at 747; *Spring*, 865 F.2d at 886; *Ferguson*, 560 F.Supp. at 1201, 1203.

Plaintiff's transfer to another County office in Alexandria was not a constructive discharge. It is undisputed that the two jobs were the same in terms of salary, duties, etc. and the court finds that the drive to Alexandria does not impose an onerous burden. A reasonable person would not feel compelled to resign under these circumstances. *See Bruhwiler v. University of Tennessee*, 859 F.2d 419, 421 (6th Cir.1988). Because the transfer cannot be construed as a constructive discharge, plaintiff fails to establish any adverse employment action on the part of the defendant. Therefore, at trial the defendant would be entitled to a directed verdict.

gation to give a job where he was assured there would be no heavy lifting a try, rather than speculate that it was a sham.)

**2.** In *retaliation* cases, the courts are more willing to redress to transfers involving changes of working conditions, with no loss of pay or benefits. *See Collins*, 830 F.2d at 702 n. 7 (collecting many cases); *Coleman v. Wayne State Univ.*,

664 F.Supp. 1082, 1092 (E.D.Mich.1987). Most of these cases involved a loss of prestige in the eyes of an objective observer, a factor lacking in this case. The Seventh Circuit takes a much more restrictive approach in cases where retaliation is not involved. *See Spring* and *Greenberg* cases cited in text *infra*.

Accordingly, defendant is entitled to summary judgment on plaintiff's remaining claims, and those claims must be dismissed. *Street*, 886 F.2d at 1479.

Therefore, the court being advised,

IT IS ORDERED that Judgment shall enter accordingly herewith.