Filed 12/15/22  Vargas v. The Vons Companies CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

NATALIA VARGAS,

　　　Plaintiff and Appellant,

　　　v.

THE VONS COMPANIES, INC. et al.,

　　　Defendants and Respondents.

B315167

(Los Angeles County Super. Ct. No. 20STCV18400)

　　　APPEAL from the judgment and order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed in part, reversed and remanded in part.

Stiller Law Firm, Ari J. Stiller; Law Offices of Justin Silverman and Justin G. Silverman for Plaintiff and Appellant.

CDF Labor Law, Leigh A. White, and Ashley N. Lopeztello for Defendants and Respondents.

\* \* \* \* \* \*

Natalia Vargas (plaintiff) worked the night shift at a grocery store for approximately 10 months before resigning. She then sued the store and a coworker alleging she was the victim of sexual harassment, gender discrimination, and retaliation. The trial court summarily adjudicated plaintiff's claims against the store and coworker. After a final judgment was entered, she appealed. We conclude that the dismissal was appropriate against the store but not against the coworker, for whom there are triable issues of material fact on plaintiff's claims for sexual harassment and intentional infliction of emotional distress. Accordingly, we affirm in part and reverse in part.

**FACTS AND PROCEDURAL BACKGROUND**

I.    **Facts**

A.    *Plaintiff and the Simi Valley Vons store*

Plaintiff worked at grocery stores owned and operated by The Vons Companies, Inc. (Vons), from 1996 and until she was terminated in 2010.

In September 2018, plaintiff was rehired by Vons to work in its Simi Valley, California store. Like its other locations, the Simi Valley store has a store director and an assistant store director. The Simi Valley store has nine departments—namely, (1) produce, (2) meat, (3) dairy, (4) frozen, (5) deli, (6) bakery, (7) liquor, (8) health and beauty aids, and (9) grocery.

2

Plaintiff initially started as part of the "day crew" in the Simi Valley store, but quickly asked to be transferred to the "night crew" because, during the day, the store's customers would "constantly interrupt[]" her by asking her where items were stocked and complain that plaintiff was "in their way" while she was restocking shelves. On the night crew, plaintiff was the "only person" in the health and beauty aids department, although she would sometimes help out with the dairy department. Her job was to ensure that her department was properly stocked by (1) cataloging when inventory was running low, (2) ordering more inventory, and (3) placing the incoming shipments of inventory on the shelves for purchase.

Dennis Duhm (Duhm) was another night crew employee who headed up the grocery, frozen, dairy, and liquor departments. His duties involved placing orders and stocking shelves alongside the employees in those departments. Duhm was also responsible for "oversee[ing] the night crew," which meant Duhm was tasked with (1) making sure other night crew employees came to work and were doing their jobs, (2) telling employees not to "dillydally," if they were not doing their jobs, and (3) reporting any dillydallying to those employees' supervisors. In no capacity did Duhm have the authority to hire, fire, or discipline any other employees or to assign employees to certain departments.

B. *Duhm sexually harasses plaintiff through February 2019*[1]

---

[1] Although plaintiff reported that Duhm made several racist and homophobic remarks at least five times a week, plaintiff's harassment and discrimination claims are based solely on the sex- and gender-based conduct directed toward her.

In late 2018 or early 2019, Duhm approached plaintiff one night while they were both at work, held up a roll of paper towels and said, "Here, why don't you stick this up your butt" because "I know how you like things in your butt."

At some point thereafter, Duhm told plaintiff that the assistant store manager "is the ugliest woman he has ever seen and that he doesn't think she is pretty like" plaintiff. On another five to ten occasions, Duhm commented to plaintiff that she was "pretty."

After plaintiff told a fellow employee that plaintiff was older than her boyfriend, Duhm told plaintiff that her "problem" was that her boyfriend was too young and that plaintiff "need[s] to be with an older man like" Duhm. He reiterated this comment another three or four times.

On at least five occasions, Duhm told plaintiff to clean the store's back room because "women are only good at cooking, cleaning, and laying on their backs."

On February 17, 2018, Duhm came down an aisle where plaintiff and a coworker, Frank Andreas (Andreas), were standing. Duhm was holding a shelf in his hands. As he neared plaintiff, he pushed the shelf against her buttocks for 10 to 15 seconds, causing her to "take a step forward" and out of his way. As he did it, he was smiling. When plaintiff asked Duhm what he was doing, Duhm responded that she was "in [his] way." Plaintiff retorted that he should "use [his] words" and warned him not to "ever" "touch [her] again."

### C.     *Plaintiff files an internal complaint about Duhm's harassment; Vons investigates*

The day after the incident with the shelf, plaintiff complained to her store director and assistant store director. In

4

the written complaint they urged her to fill out, she reported that (1) Duhm had "pushed [her] with a shelf . . . on [her] butt," and (2) Duhm had, "in the past," told her "multiple times that he thinks [she is] pretty and that she need[s] to date older men like him."

Vons directed one of its human resources employees to investigate plaintiff's complaint. While the investigation was ongoing, the store director adjusted Duhm's work schedule to minimize his overlap with plaintiff. The investigator, Wally Hernandez, read plaintiff's written statement and then conducted several interviews. He followed up with plaintiff, asking her if Duhm had sexually harassed anyone else; she said "no." Hernandez got written statements from the store director and assistant store director, who recounted plaintiff's reports to them about Duhm's conduct. Hernandez also interviewed Duhm. Duhm denied telling plaintiff she was "pretty," explained that his comment about dating older men was not in "reference[] to himself," and admitted "accidentally bump[ing]" plaintiff with the shelf but insisted that he had apologized to her "immediately." Duhm's written statement mirrored his interview statements. Hernandez admonished Duhm not to retaliate against plaintiff due to her complaint.

Although plaintiff told the store director that she did not "want to work with [Duhm] ever again," Vons ultimately concluded that it could not take formal action to discipline Duhm because Hernandez's investigation did not corroborate plaintiff's claim of harassment, leaving this case as an inconclusive "he-said, she-said" situation.

**D.** *Duhm engages in what plaintiff perceives to be retaliatory conduct*

After the February 2019 complaint and investigation, plaintiff reported no further incidents of sexual harassment by Duhm.

Plaintiff nevertheless perceived that Duhm was retaliating against her for reporting him in February 2019 because:

- "[A]lmost every day," Duhm would ask plaintiff, "You're not done yet?" when she was restocking shelves, and would ask her why she was not yet finished.

- Whenever plaintiff would ask Duhm a work-related question, he would tease her for not "know[ing]" the answer given the length of her service with Vons.

- Duhm would ask plaintiff to help stock items outside of her department (such as baby food, baby formula, and diapers), although Duhm did not have authority to do so. Instead, the store director chided Duhm for it after plaintiff reported it to the director.

- Duhm ordered items for the health and beauty aids department that were not necessary, causing there to be too much inventory that was not properly stocked. The store director initially got upset with plaintiff, but later admonished Duhm for making the unauthorized orders.

- For a period of three to four weeks, the store director permitted Duhm to "writ[e]" the "schedule" for plaintiff's department, which included allocating some of her time to helping other departments. Plaintiff did not feel that Duhm allocated enough time to the health and beauty aids department

6

for her to get her work done. After plaintiff complained to the store director, the director resumed doing plaintiff's schedule.

● On May 10, 2019, Duhm spoke with Andreas in the back room in front of plaintiff. In what was a five- or ten-minute rant, Duhm lamented to Andreas that "[n]owadays everyone is such a fucking pussy" because "[e]verybody takes [what you say] the wrong fucking way" and "complains" about anything. Although plaintiff was only eavesdropping on the conversation, she "felt like" Duhm was "directing" his words toward her—and "indirectly talking about [her]"—in light of her prior complaint.

### E. *Plaintiff files an internal complaint about Duhm's retaliation; Vons investigates*

Almost a week after the May 10 conversation, plaintiff made a written complaint that Duhm was retaliating against her.

The very next day, on May 16, 2019, Vons directed Hernandez to investigate plaintiff's complaint. Hernandez started conducting interviews on June 12, 2019. Hernandez interviewed Duhm, who denied referring to other employees as "fucking pussies" and denied making any racist remarks. Hernandez also interviewed Andreas, but Andreas likewise reported that Duhm had not referred to anyone as a "fucking pussy." Hernandez spoke with two other night shift employees, who stated that they had never heard (or overheard) Duhm making inappropriate comments. Hernandez also interviewed plaintiff. Plaintiff expressed her "frustrat[ion]" that Vons had not disciplined Duhm after her first complaint. Hernandez explained that no evidence corroborated plaintiff's account of the shelf incident (because there was no video and no other witness had verified plaintiff's account of what happened). Hernandez also informed plaintiff that Vons also could not substantiate the

7

events underlying plaintiff's May 2019 complaint because plaintiff did not have a "credible witness" beyond herself. Thus, Hernandez told her, Vons would likely not take any action against Duhm; absent more than a he-said/she-said conflict in the evidence, Hernandez explained, "We can't help you."

**F.** ***Plaintiff transfers stores and ultimately resigns***

The news that Vons's investigation did not turn up sufficient evidence to discipline Duhm made plaintiff "unbearably upset": She started losing weight, having "panic attacks," losing sleep, and crying. Plaintiff went to a doctor and demanded a note putting her on leave due to stress; the doctor complied.

Plaintiff communicated to Vons that she could not work with Duhm, but would be open either to (1) working a different shift than Duhm in the Simi Valley store, or (2) being transferred to a different store. That is what plaintiff's doctor's note said. That is what plaintiff told Vons's human resources personnel as well as the store director for the Simi Valley store. Plaintiff told her union representative than she "prefer[red]" a transfer over a different shift. Vons's human resources personnel consulted with plaintiff's union representative, and on that basis, transferred plaintiff to its Chatsworth store for one week and then to its Thousand Oaks store, which was a 30-minute commute from plaintiff's residence.

Plaintiff had the same job at the Thousand Oaks store as she had at the Simi Valley store, although the "general merchandise department" in Thousand Oaks was bigger than it was in Simi Valley. Plaintiff's new director was happy with plaintiff's job performance.

After one week at the Thousand Oaks store, plaintiff gave two weeks' notice. Her last day was July 27, 2019.

8

## II. Procedural Background

### A. *Pleadings*

On May 14, 2020, plaintiff sued Vons and Duhm. As pertinent here, plaintiff brought claims (1) for sex- and gender-based harassment in violation of California's Fair Housing and Employment Act (FEHA) (Gov. Code, § 12940 et seq.),[2] against Vons and Duhm; (2) for sex- and gender-based discrimination in violation of FEHA, against Vons; (3) for retaliation in violation of FEHA, against Vons; (4) for intentional infliction of emotional distress, against Vons and Duhm; and (5) for wrongful constructive termination in violation of public policy, against Vons.[3]

### B. *Summary adjudication*

Vons and Duhm moved for summary judgment or, in the alternative, summary adjudication of 17 issues. Following a full round of briefing and a hearing, the trial court denied summary judgment but granted summary adjudication of nine issues. In so ruling, the court determined that (1) plaintiff's harassment claim fails (a) against Vons, because the undisputed facts show that Duhm was a "nonsupervisory co-worker" and that Vons took

---

[2] All further statutory references are to the Government Code unless otherwise indicated.

[3] Plaintiff also sued Vons and Duhm for (1) sexual assault, and (2) sexual battery. The trial court summarily adjudicated the sexual assault claim against plaintiff, and plaintiff has not argued on appeal that this ruling was incorrect. Plaintiff voluntarily settled her sexual battery claim against Vons and Duhm, so this claim is also not before us on appeal.

9

"appropriate action" once it learned of Duhm's harassment, (b) against Vons and Duhm, because the undisputed facts show that Duhm's harassment was "not sufficiently severe or pervasive" to constitute a hostile work environment; (2) plaintiff's discrimination and retaliation claims against Vons fail because the undisputed facts show that plaintiff was not subject to an adverse employment action; (3) plaintiff's claim for intentional infliction of emotional distress fails against Vons, because the undisputed facts show that Vons did not engage in outrageous behavior; (4) plaintiff's claim for wrongful constructive termination in violation of public policy against Vons fails because the undisputed facts show that plaintiff was not constructively discharged; and (5) plaintiff's prayer for punitive damages fails against Vons because the undisputed facts show that no officer, director, or "managing agent" of Vons acted with malice, oppression or fraud. The court subsequently amended its ruling to also grant summary adjudication of plaintiff's intentional infliction of emotional distress claim against Vons and Duhm because the undisputed facts show that it is barred by the exclusivity of workers' compensation remedies.

C. *Appeal*

After plaintiff dismissed her entire case, she filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in summarily adjudicating (1) against Vons, her claims for sexual harassment, discrimination, retaliation, intentional infliction of emotional distress, and wrongful termination, as well as her prayer for punitive damages; and (2) against Duhm, her claims for sexual

10

harassment and intentional infliction of emotional distress as well as her prayer for punitive damages.[4]

Summary adjudication, like summary judgment, is appropriate when the moving party shows "[it] is entitled to a judgment as a matter of law" (Code Civ. Proc., § 473c, subd. (c)) because, among other things, the nonmoving party (here, plaintiff) cannot establish "[o]ne or more elements of [her] cause of action" (*id.*, subds. (o)(1) & (p)(2)). (*QDOS, Inc. v. Signature Financial, LLC* (2017) 17 Cal.App.5th 990, 998 (*QDOS*); *State of California v. Continental Ins. Co.* (2017) 15 Cal.App.5th 1017, 1031 [summary adjudication is "'procedurally identical to [a] motion[] for summary judgment'"].) Summary adjudication should be denied only when there are "genuine" or "triable" issues of fact to be resolved at trial—that is, when "the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary adjudication] motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860 (*Serri*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; Code Civ. Proc., § 437c, subds. (f)(1), (o)(1), & (p)(2).) In applying this standard, we independently review the evidence in the light most favorable to the nonmoving party and "resolv[e] . . . any doubts" against summary adjudication. (*Salas v. Sierra*

---

[4] We asked the parties for supplemental briefing on whether plaintiff's appeal challenged the trial court's rulings *involving Duhm* (as opposed to merely Vons). Because plaintiff's notice of appeal identifies the summary adjudication order by which Duhm partly prevailed, because plaintiff's opening brief makes arguments applicable to Duhm, and because Vons's respondent's brief responds to the arguments applicable to Duhm, we conclude that the rulings involving Duhm are properly before us and that the parties had ample notice and opportunity to address them.

*Chemical Co.* (2014) 59 Cal.4th 407, 415; *Wilson v. 21st Century Ins. Co.* (2017) 42 Cal.4th 713, 716-717.)

As a threshold matter, plaintiff argues that she is entitled to reversal due to procedural defects with the trial court's summary adjudication ruling—namely, that the court (1) improperly disregarded some of her evidence in opposition to the motion for summary adjudication due to defects in her separate statement without first giving her an opportunity to cure those defects (e.g., *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1211-1212, 1214-1215; *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 73), and (2) issued its ruling without any specific findings or reasoning. We need not consider these procedure-based arguments because our task on appeal is to independently examine whether summary adjudication was appropriate (*Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 825; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455); in so doing, we will consider all of the admissible evidence presented and set forth our reasons. Any deficiencies in the trial court's analysis are therefore irrelevant.

We now turn to the merits of plaintiff's motion.

## I.    Sexual Harassment

To prevail on a claim for sexual harassment under FEHA, a plaintiff must establish that (1) the employer subjected the plaintiff to verbal or physical contact of a sexual nature, (2) that conduct was unwelcome, and (3) the conduct was sufficiently "severe and pervasive" to alter the terms and conditions of the plaintiff's employment, thereby creating an abusive working environment. (*Sheffield v. Los Angeles County* (2003) 109 Cal.App.4th 153, 160 (*Sheffield*); *Lyle v. Warner Brothers*

*Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*); *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1045 (*Hughes*); *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130 (*Aguilar*); see also Gov. Code, § 12940, subd. (j) [violation of FEHA to "harass an employee" on the basis of "sex" or "gender"].) Whether *the employer* has subjected the plaintiff-employee to harassment—and thus can be liable for that harassment—turns on *who* is doing the harassment: If the harasser is a "supervisor," the employer is strictly liable for any conduct by that individual; if the harasser is *not* a supervisor, however, the employer is liable only if the employer (1) "knew or should have known of the harassing conduct," and (2) "failed to take immediate and appropriate corrective action." (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040-1041 (*State Department*); *Chapman v. Enos* (2004) 116 Cal.App.4th 920, 928 (*Chapman*); § 12940, subd. (j)(1); see generally, *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1046 ["[C]haracterizing the employment status of the harasser is very significant"].)

### A.    *Vons's liability for sexual harassment*

As noted above, the trial court summarily adjudicated plaintiff's sexual harassment claim *against Vons* in part based on its conclusions that the undisputed facts established that (1) Duhm was not a "supervisor" within the meaning of FEHA, and (2) Vons took immediate and appropriate corrective action once it learned of Duhm's conduct. Plaintiff challenges both of those conclusions on appeal.

#### 1.    *Is there a triable issue of material fact as to whether Duhm is a "supervisor" within the meaning of FEHA?*

Under FEHA, a "supervisor" is an employee who meets a two-part test: The employee must (1) "hav[e] the authority" to

13

"hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, [] discipline," "direct" other employees, "adjust their grievances," or "effectively to recommend [the adjustment of grievances]" and (2) "the exercise of that authority [must not be] of a merely routine or clerical nature, but [must] require[] the use of independent judgment." (§ 12926, subd. (t).) An employee is not a supervisor merely because they "hold[] a more senior position" in the employer's hierarchy. (*Lamb v. Household Credit Services* (N.D.Cal. 1997) 956 F.Supp. 1511, 1517 (*Lamb*).) On the other hand, an employee can be a supervisor without being "fully accountable and responsible" for the work of all of his or her subordinates. (*Chapman*, *supra*, 116 Cal.App.4th at pp. 929-930.)

The undisputed facts establish that Duhm is not a "supervisor" under this definition.

As an initial matter, it is undisputed that Duhm did not have any direct oversight over plaintiff: Plaintiff was in the health and beauty aids department, one of the Simi Valley store's five departments over which Duhm had no management or supervisory authority. There is also no evidence that Duhm undertook supervisory tasks over anyone in the four departments he did oversee: He had seniority, but he worked alongside the other employees in taking inventory, ordering merchandise as needed, and stocking shelves. His job title was "Retail Service Manager," but a job title is not dispositive (*Lamb*, *supra*, 956 F.Supp. at pp. 1517-1518), and Duhm's actual duties did not make him a supervisor.

Although Duhm was also responsible for overseeing the night crew in the Simi Valley store, it is undisputed that his tasks in this regard—making sure the night crew employees

14

showed up and were not "dillydallying" and reporting any "dillydallying" to those employees' supervisors—did not involve the "use of independent judgment." Functionally, Duhm was a living "nanny cam" for the night crew's actual supervisors, allowing them to observe what their subordinates were doing as well as to have the ability to have someone remind them to do their work if they started to slack off. There is no evidence that Duhm exercised any "independent judgment" while executing these observe-and-report duties; he could not alter anyone's duties or discipline anyone for any dereliction of their job duties. (Accord, *Lamb*, *supra*, 956 F. Supp. at pp. 1513, 1517-1518 [employee with "responsibilities" to "monitor[]" other employees is not a "supervisor" when there is no independent judgment involved].) Although plaintiff testified that she "was told" that Duhm "was the third person in charge of the store" and was "in charge of everyone," Vons objected to this statement as hearsay and the trial court implicitly excluded it as such; this was undoubtedly the correct ruling (Evid. Code, § 1200), so this statement cannot create a triable issue of fact. (*Dina v. People ex rel. Dept. of Transportation* (2007) 151 Cal.App.4th 1029, 1048 [failure to appeal leaves evidentiary ruling intact], disapproved on another ground in *Weiss v. People ex rel. Department of Transportation*; *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 ["Only *admissible evidence* is liberally construed in deciding whether there is a triable issue."].)

Plaintiff tendered evidence that Duhm had assigned plaintiff stocking duties for departments other than her own and had ordered too much inventory for her own department. However, it is undisputed that the store director did not authorize Duhm to take these actions (and the director assured

15

plaintiff that her failure to complete the tasks would not be counted against her). It is well settled that an employee is a supervisor only if he legitimately has the authority to act as one; Duhm's exercise of authority never given to him does not make him a supervisor. (§ 12926, subd. (t) [employee must "hav[e] the authority" to perform the listed supervisory acts]; see *Meritor Sav. Bank, FSB v. Vinson* (1986) 477 U.S. 57, 70-72 [rejecting notion of "ostensible" authority as a supervisor; actual authority is required].)

Plaintiff also tendered evidence that, for a three- or four-week period, the store director authorized Duhm to "writ[e]" the "schedule" for plaintiff's department, which included allocating some of her time to helping with other departments. Citing *Butler-Johnson Corp. v. NLRB* (9th Cir. 1979) 608 F.3d 1303, 1305-1306 & fn. 4), plaintiff urges that this conduct alone means that Duhm is a supervisor for purposes of her sexual harassment claim. We disagree. In *Butler-Johnson*, the court held that an employee who had reassigned other employees' duties on one occasion was a "supervisor only in the most technical sense" under analogous federal law because that task required him to exercise independent judgment. (*Ibid.*) To the extent *Butler-Johnson* stands for the proposition that allowing an otherwise nonsupervisory employee to do a supervisor-like task once converts that individual into a "supervisor" both backwards and forwards in time, we disagree with *Butler-Johnson*. (See *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58 [federal precedent is at most persuasive authority]; *People v. Williams* (1997) 16 Cal.4th 153, 190 [same].) It is undisputed that, at the time, Duhm had been an employee of Vons for nearly 14 years, and that the record indicates he wrote schedules for less than a month, total. This is

not enough to turn his otherwise nonsupervisory job into a supervisory one. What is more, plaintiff indicates that Duhm's month-long period of writing schedules occurred *after* her February 2019 complaint, which is the point at which plaintiff said that all sexual harassment had stopped. At most, that made Duhm a supervisor *from the time of his schedule writing forward*; because the sexual harassment claim occurred earlier, Duhm was not a supervisor at that time.

Plaintiff raises one further, statute-based argument. Specifically, she urges that an employer can prevail on summary adjudication only if it introduces evidence that a particular employee did not engage in every single one of the 13 supervisory acts set forth in FEHA's definition of "supervisor." For support, she cites *Chapman*, *supra*, 116 Cal.App.4th at p. 929. But *Chapman* only held that an employee who did not have the authority to hire or fire others could still be a "supervisor" if the evidence showed that the employee satisfied other portions of the definition. *Chapman* did not hold that an employer must negate every portion of the definition; nor would it, as that burden would require employers to prove 13 negatives with undisputed facts. Our Legislature may prefer sexual harassment cases to go to trial rather than be decided on summary judgment (§ 12923, subd. (e)), but we decline to construe FEHA to make summary adjudication impossible even in cases where the undisputed evidence before the court dictates judgment for the defendant-employer. This argument also does not aid plaintiff in this case, because a supervisor must also exercise independent judgment in carrying out these 13 tasks, and the undisputed evidence indicates Duhm exercised no such judgment.

17

*2.	Is there a triable issue of material fact as to whether Vons took "immediate and appropriate corrective action" within the meaning of FEHA?*

Because Duhm is not a "supervisor," his sexual harassment is attributable to his employer Vons only if Vons (1) knew or should have known of his conduct *and* (2) failed to take "immediate and appropriate corrective action." (§ 12940, subd. (j)(1); *State Department of Health*, *supra*, 31 Cal.4th at pp. 1040-1041; *Bradley v. Dept. of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1631 (*Bradley*) ["[W]hen harassment is by a nonsupervisory employee, an employer's liability is predicated not on the conduct itself, but on the employer's response once it learns of the conduct."].)

With respect to the second element of "immediate and appropriate corrective action," "[t]he most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." (*Swenson v. Potter* (2001) 271 F.3d 1184, 1193 (*Swenson*); *Mathieu v. Norrell Corp.* (2004) 115 Cal.App.4th 1174, 1185 (*Mathieu*) [employer must take "prompt, reasonable and efficacious remedial action" in response to harassment complaint].)  That is because the employer's act in conducting the investigation itself—regardless of the outcome—sends the message to all employees that harassment will not be tolerated.  (*Swenson*, at p. 1193.)  To fulfill this function, the investigation need not be "perfect"; it is enough that the investigation is a "reasonable" one that is neither "rigged to reach a pre-determined conclusion" or "otherwise conducted in bad faith."  (*Id.* at pp. 1193, 1196, 1197.)  An investigation meets this "reasonable" standard even if the

18

employer concludes that no harassment occurred, and even if that conclusion is ultimately shown to be incorrect.  (*Id.* at p. 1196.)  An investigation does not become unreasonable merely because the employer declines to "credit [the] uncorroborated statements [of] the complainant" if "th[ose statements] are disputed by the alleged harasser" (*Baldwin v. Blue Cross/Blue Shield* (11th Cir. 2007) 480 F.3d 1287, 1303-1304), or merely because the employer declines to impose discipline in such a he-said/she-said situation.  And an employer's corrective action is not inappropriate merely because the employer elects not to separate the alleged harasser from the complainant when the investigation is inconclusive; the duty to separate coworkers turns on (1) the severity of the alleged harassment and (2) the evidence developed during the investigation.  (*Swenson*, at pp. 1192-1193.)

The undisputed facts establish that Vons took "immediate and appropriate corrective action" in response to plaintiff's two complaints.  In response to plaintiff's February 2019 complaint of sexual harassment, Vons immediately tasked Hernandez with investigating the complaint, and Hernandez interviewed witnesses and collected their written statements.  While this investigation was ongoing, plaintiff's store director also adjusted Duhm's work hours to reduce his interaction with plaintiff.  Although Duhm was not disciplined because Hernandez was unable to corroborate plaintiff's account of what happened, the investigation successfully stopped the sexual harassment:  It is undisputed plaintiff told Hernandez that she suffered no further harassment—sexual or otherwise—until the incident underlying her May 2019 complaint three months later.  (Accord *Mathieu*, *supra*, 115 Cal.App.4th at p. 1185 [employer acts reasonably with

respect to complaint about sexual harassment if harassment ceases after investigation complete]; *Swenson*, *supra*, 271 F.3d at p. 1197 [same].) Indeed, in response to plaintiff's May 2019 complaint of retaliatory conduct (rather than sexual harassment), Vons once again tasked Hernandez with investigating the complaint, and Hernandez again interviewed witnesses and collected their written statements. Although Vons's human resources department ultimately concluded, based on Hernandez's investigation, that the May 2019 complaint also could not be substantiated, Vons nevertheless took the additional step of separating plaintiff from Duhm in accordance with what plaintiff had communicated her wishes to be by transferring her to the Thousand Oaks store. In sum, Vons's responses to plaintiff's complaints were reasonable as a matter of law.

Plaintiff raises what boils down to three arguments in response.

First, she argues that Vons did not take "immediate and appropriate corrective action" because its May 2019 investigation was not conducted "immediately" (as Hernandez did not conduct any interviews for approximately four weeks after being tasked with the investigation) and because Vons's investigation reached the wrong outcome (as plaintiff—rather than Duhm and Andreas—was the telling the truth). To begin, this investigation was not directly related to plaintiff's sexual harassment claim because that May 2019 complaint was based on retaliatory behavior and not further sexual harassment. The investigation was reasonable anyway. Although Hernandez's four-week delay before starting interviews was certainly not "perfect," perfection is not required. More to the point, there is no evidence that the delay was unreasonable given that there is no evidence that

20

witnesses would have said anything different had they been questioned a few weeks earlier and given that the sum total of everyone's statements did not substantiate plaintiff's complaint of retaliatory conduct. Further, the fact that Vons's investigation reached an outcome with which plaintiff disagrees does not preclude our finding, as a matter of law, that Vons's investigation was reasonable. As noted above, an employer can both act reasonably *and* reach a mistaken conclusion as to whether the accused employee committed harassment. (*Swenson*, *supra*, 271 F.3d at p. 1196.)

Second, plaintiff argues that the inadequacy of Vons's responses to her complaints is established by the fact that it wrongly decided *not* to discipline Duhm. However, "[a]s a matter of policy, it makes no sense to tell employers that they act at their legal peril if they fail to impose discipline even if they do not find what they consider to be sufficient evidence of harassment." (*Swenson*, *supra*, 271 F.3d at p. 1195.)

Third, plaintiff argues that Vons did not take "appropriate corrective action" because it ultimately transferred *her* (rather than Duhm). The premise of this argument is that, should an employer decide to separate an accuser from the accused when an investigation into harassment is inconclusive, the employer must always transfer the accused rather than the accuser. This is not the law. An employer enjoys "wide discretion" in choosing how to minimize contact between the two employees (*Bradley*, *supra*, 158 Cal.App.4th at p. 1630; *Swenson*, *supra*, 271 F.3d at p. 1194), and may exercise that discretion by transferring the accuser, rather than the accused, to another position that is not "objectively less desirable" (*Swenson*, at p. 1194). Although a transfer that entails a "longer commute or an inconvenient work

21

schedule" can be objectively less desirable (and hence constitute an "inappropriate response") (*ibid.*), plaintiff in this case—as discussed more fully below—was given the option of working different hours in the same Vons store or transferring to a different store, and communicated her preference to transfer. As a result, she cannot now claim that her transfer was objectively less desirable because of a nominally longer commute time.

### B.     *Duhm's liability for sexual harassment*

Separate and apart from an employer's liability for sexual harassment, the harassing employee may also be liable under FEHA for such harassment. (Gov. Code, § 12940, subds. (j)(3) & (j)(4)(C) ["'harassment' because of sex includes sexual harassment [and] gender harassment"].) Because there are triable issues of material fact as to whether plaintiff has met two of the three elements of sexual harassment as against Duhm (that is, that he subjected her to verbal or physical contact of a sexual nature and that his conduct was unwelcome), Duhm's personal liability for sexual harassment turns on whether there are also triable issues of material fact as to the third element—that is, whether Duhm's conduct was sufficiently "severe and pervasive" to alter the terms and conditions of plaintiff's employment, thereby creating an abusive working environment.

We conclude there are.

The assessment of whether a harasser's conduct was sufficiently "severe and pervasive" looks to the totality of the circumstances, including (1) the frequency of the harassing conduct, (2) its severity, (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interfered with the plaintiff's work performance. (*Lyle, supra*, 38 Cal.4th at p. 283; *Hughes, supra*,

22

46 Cal.4th at p. 1042; *Caldera v. Dept. of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38; *Fuentes v. AutoZone, Inc.* (2011) 200 Cal.App.4th 1221, 1227; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609-610.)  To be "severe and pervasive," the harassing conduct must be such that it would interfere with a *reasonable* employee's work performance *and* actually offend the plaintiff in this case.  (*Aguilar*, *supra*, 21 Cal.4th at pp. 130-131.)  Conduct does not typically satisfy this standard if it is merely "annoying or 'merely offensive'" (*Lyle*, at p. 283), or if it is "'occasional, isolated, sporadic, or trivial'" (*Aguilar*, at p. 131; *Alexander v. Community Hospital of Long Beach* (2020) 46 Cal.App.5th 238, 263 (*Alexander*); *Hughes*, *supra*, 46 Cal.4th at p. 1048), although "[a] single incident of harassing conduct" may sometimes be "sufficient to create a triable issue regarding the existence of a hostile work environment" (§ 12923, subd. (b)).  However, conduct interferes with an employee's work performance if it results in the loss of a tangible job benefit (which constitutes a direct alteration of the terms and conditions of employment) or if the plaintiff satisfies the "'commensurately higher showing'" that the conduct "'was pervasive and destructive of the working environment'" (which constitutes a more indirect and implicit alteration).  (*Lyle*, at p. 284; *Fisher*, at p. 610; see also *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 145 [to be actionable, workplace must be "'"permeated"'" with "'"intimidation, ridicule and insult"'"].)

There is a triable issue of material fact regarding whether Duhm's conduct toward plaintiff was sufficiently severe and pervasive as to alter the terms of her employment.  Plaintiff offered evidence of repeated verbal harassment:  Over a three- or four-month period, Duhm told plaintiff five to 10 times that she

23

was "pretty," told her three to five times that she should date older men like him, told her five times that women are best at "lying on their backs," and made a comment about sticking a roll of paper towels "up [her] butt" because he knows she "like[s] things in [her] butt." Plaintiff also offered evidence of physical harassment: In February 2019, Duhm pushed a shelf into her butt, while grinning; given Duhm's prior comment about sticking items "up [her] butt," his conduct with the shelf could reasonably be viewed as a distasteful sexual gesture. Although plaintiff did not suffer a loss of any tangible job benefit, a reasonable jury crediting plaintiff's evidence could conclude that it was more than "annoying or merely offensive" and instead "pervasive and destructive of the working environment." Our conclusion that there is a triable issue as to whether Duhm's conduct is actionably severe and pervasive also dovetails with our Legislature's recent pronouncement that summary adjudication of the merits of sexual harassment claims is to be disfavored. (§ 12923, subd. (e).)

The trial court accordingly erred in granting summary judgment of plaintiff's sexual harassment claim against Duhm, and we must reverse and remand that claim for further proceedings.

## II.    Discrimination and Retaliation

To prevail on a claim for discrimination under FEHA, a plaintiff must establish that (1) she is a member of a protected class (here, sex and gender), (2) she was qualified for the position she sought to maintain, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive. (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 355 [discrimination]; § 12940, subd. (a) [same; unlawful for employer

24

to, based on "sex" or "gender," "discriminate against the person in compensation or in terms, conditions, or privileges of employment"].)  To prevail on a claim for retaliation under FEHA, a plaintiff must establish that (1) she engaged in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the employer's action.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*) [retaliation]; *Light v. Dept. of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91 (*Light*) [same]; § 12940, subd. (h) [unlawful for employer to "discharge, expel, or otherwise discriminate against any person because the person . . . has filed a complaint"].)  Thus, to prevail on either type of claim (discrimination or retaliation), the plaintiff must establish that her employer subjected her to an adverse employment action.

An adverse employment action is defined as an action by the employer that "materially" and "adverse[ly]" "affect[s] the terms and conditions of employment."  (*Yanowitz, supra*, 36 Cal.4th at p. 1036.)  Such actions reach beyond firing, demoting, or refusing to promote the employee; they also reach those actions by the employer that are "reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion."  (*Id.* at pp. 1054-1055; *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 423.)  However, actions must be "material," and materiality is adjudged objectively.  (*Momah v. Dominguez* (6th Cir. 2007) 239 Fed.Appx. 114, 124 (*Momah*); *Yanowitz*, at p. 1054 ["objective perspective"]; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064 ["objective evidence"].)  Thus, actions by an employer that subjectively "upset" or "'humiliat[e]'" the

employee, or "'are not to [her] liking,'" are insufficient. (*Yanowitz*, at p. 1054; *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386, 393; *Light*, at p. 92.)

The trial court held that the undisputed evidence showed plaintiff suffered no adverse employment action. On appeal, plaintiff urges that she suffered two adverse employment actions. First, contrary to her statement to Hernandez that she suffered no further sexual harassment between February and May 2019, plaintiff asserts that Duhm gave her "'disadvantageous assignments'" "based on her sex and/or out of retaliation" after she made her February 2019 complaint—all with the aim of undermining her efficacy at work—by (a) criticizing the pace of her work and knowledge about the store's operations, (b) asking her to stock items outside her department (despite having no authority to do so), (c) ordering excess items for her department (despite having no authority to do so), and (d) allocating some of her time to departments other than her own. Second, plaintiff asserts that Vons transferred her to the Thousand Oaks store, which increased her commute time, after her May 2019 complaint.

We separately examine each proffered adverse employment action.

### A. *Ongoing harassment by Duhm*

We reject the argument that Duhm's alleged sex- and gender-based harassment could constitute an adverse employment action to support plaintiff's sex- and gender-based discrimination claim. To accept that argument would cause Duhm's harassing conduct to satisfy *two* elements—namely, that plaintiff was subjected to conduct motivated by discriminatory

26

animus *and* that plaintiff suffered an adverse employment action. The net result is to render superfluous the adverse employment action element. We are not at liberty to eliminate the very elements of FEHA claims. (See *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1141; *People v. Jeffers* (1987) 43 Cal.3d 984, 991-992.) Plaintiff is correct that harassing behavior *can* constitute an adverse employment action in a retaliation claim when the facts show that the harassing conduct is in retaliation for engaging in protected activity. (*Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 212 (*Kelley*); *Light*, *supra*, 14 Cal.App.5th at p. 92.) But this precedent does not address the use of harassing conduct to do double duty as to both the discriminatory conduct and the adverse employment action for a discrimination claim; extending the precedent to this new context is improper for the reasons set forth above.[5] Plaintiff is also correct that the same unlawful conduct by a fellow employee can constitute both discriminatory conduct and retaliation. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 474-475; *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 932.) But saying that the same conduct can satisfy one element of two different claims is *not* the same as saying that the same conduct can satisfy two different elements of the same claim.

We also reject the argument that Duhm's alleged sex- and gender-based harassment in this case could constitute an adverse employment action to support her retaliation claim. Although, as

---

[5] We accordingly reject plaintiff's assertion that the alleged hostile work environment created by Duhm's conduct is itself an adverse employment action giving rise to a gender discrimination claim.

noted above, harassing conduct *can* constitute an adverse employment action for a retaliation claim (*Kelley*, *supra*, 196 Cal.App.4th at p. 212; *Light*, *supra*, 14 Cal.App.5th at p. 92), we have concluded as a matter of law that Duhm's harassing conduct is not attributable to Vons. Thus, *Vons* is not liable for that conduct and it cannot be considered an adverse employment action *by Vons*. Plaintiff points out that the store director got upset with her upon learning that she had not stocked the excess inventory that Duhm had ordered, but Duhm's conduct in this regard was not authorized and the store director did not take any action against plaintiff once he learned that Duhm was responsible for the excess inventory.

## B. *Transfer to the Thousand Oaks store*

We reject plaintiff's contention that Vons's act in transferring her to the Thousand Oaks store in July 2019 could constitute an adverse employment action, and we do so for two reasons.

First, an employer's decision to transfer an employee— while allowing her to keep her same position and pay—does not, by virtue of *any* increase in the length of the employee's commute, constitute an adverse employment action. (*Cooper v. UPS* (5th Cir. 2010) 368 Fed.Appx.469, 474-475 [so holding, and collecting cases].) Whether a longer commute constitutes an adverse employment action does turns on whether that increase in commute time makes the new location "objectively less desirable." (*Swenson*, *supra*, 271 F.3d at p. 1194 [transfer may be "inappropriate response" to complaint]; *Keeton v. Flying J, Inc.* (6th Cir. 2005) 429 F.3d 259, 264 (*Keeton*); *Darnell v. Campbell County Fiscal Court* (E.D.Ky. 1990) 731 F.Supp. 1309, 1313 (*Darnell*) ["transfer over great distance can amount to a

28

constructive discharge"].)  The undisputed facts here show that plaintiff will have a 30-minute commute from her residence to the Thousand Oaks store.  There is nothing in the record indicating plaintiff's commute time to the Simi Valley store, but unless she lives immediately adjacent to the Simi Valley store, the change in commute time is less than 30 minutes.  Even so, we conclude as a matter of law that an increase in commute of less than 30 minutes in a metropolis like the greater Los Angeles area, where many workers have daily commutes that take hours, does not make a job objectively less desirable.  (Accord, *Darnell*, at p. 1313 [same; "as a matter of law," 20-minute drive did not render transfer a "constructive discharge"].)

Second, and even if we ignore the first ground, the transfer to the Thousand Oaks store is not objectively less desirable as a matter of law because plaintiff expressed a preference for that transfer.  In her direct communications with Vons, plaintiff indicated she would accept a change in her shift at the Simi Valley store *or* a transfer to a different store; indirectly through her union representative, plaintiff subsequently indicated that she preferred a transfer, but one that let her keep her status as a night crew employee.  Because plaintiff never alleged or argued below that changing her shift was an adverse employment action, she *elected* to forego a nonadverse employment action for what she now claims to be an adverse employment action.  Consequently, the action plaintiff now complains is an adverse employment action is not an action Vons imposed upon her; it was a product of her own choice.

Plaintiff resists this conclusion with two arguments.

First, she argues that Vons misunderstood her preference because she subjectively preferred to stay in the Simi Valley store

29

because she has "friends at the store" and "live[s] close." As noted above, plaintiff communicated to Vons that she was fine with a change in shift or a transfer, and then communicated a preference—through her union representative—for the transfer. Plaintiff's contention that her union representative misunderstood her preference is irrelevant, as *Vons* had no knowledge of the mix-up. Vons's deference to plaintiff's choice does not become an adverse employment action merely because plaintiff has explained in subsequent litigation that she actually told her union representative—but not Vons—something different. What is more, plaintiff's *subjective* preferences to work with "her friends" are irrelevant to whether something is an adverse employment action, which, as noted above, is an *objective* standard. (*Momah*, *supra*, 239 Fed.Appx. at p. 123.)

Second, plaintiff argues that *either* option—a change in shift or a transfer—was an adverse employment action because either was necessary to get away from Duhm. The premise of this argument is that an employer commits an adverse employment action whenever it elects to separate the accuser and accused by moving the accuser rather than the accused. Alas, this is not the law. "If [an employer] decides to separate two employees in the workplace, the employer may properly consider the relative ease of moving them and their respective importance to its business operations." (*Swensen*, *supra*, 271 F.3d at p. 1194.) Here, Vons determined that that plaintiff's claims could not be substantiated but that she should be separated from Duhm to avoid any potential issues in the future; its subsequent decision to transfer a relatively new and lower-level employee like plaintiff rather than transfer its night crew chief with years

30

of experience in the Simi Valley store fits comfortably within its discretion.

## III. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009; *Haberman v. Cengage Learning, Inc.* (2009) 180 Cal.App.4th 365, 389; *Trerice v. Blue Cross of Cal.* (1989) 209 Cal.App.3d 878, 883 (*Trerice*).) Conduct is "outrageous" only if it "'exceed[s] all bounds of that usually tolerated in a civilized community'"; it is not enough that the conduct cause "discomfort, worry, anxiety, upset stomach, concern [or] agitation." (*Hughes*, *supra*, 46 Cal.4th at p. 1051; *Trerice*, at p. 883; *Fowler v. Varian Assocs.* (1987) 196 Cal.App.3d 34, 44.)

Plaintiff's claim for intentional infliction of emotional distress *against Vons* is without merit as a matter of law for two reasons. First, plaintiff's exclusive remedy is the workers' compensation system because, as explained above, plaintiff's claims for sexual harassment, sex- and gender-based discrimination and retaliation against Vons fail as a matter of law. (*Miklosy v. Regents of University of Cal.* (2008) 44 Cal.4th 876, 902-903; cf. *Light*, *supra*, 14 Cal.App.5th at pp. 97-98 ["A number of California authorities have concluded claims for intentional infliction of emotional distress in the employment context may be asserted where the actionable conduct also forms

the basis for a FEHA violation."; citing cases]; *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 352 [emotional distress arising out of employment not barred where distress "is engendered by an employer's illegal discriminatory practices"]; *Nazir v. United Airlines Inc.* (2009) 178 Cal.App.4th 243, 288 [same]; *Hughes*, *supra*, 46 Cal.4th at p. 1051 ["If properly pled, a claim for sexual harassment can establish 'the outrageous behavior element of a cause of action for intentional infliction of emotional distress.'"].) Second, and independent of the workers' compensation bar, the sole conduct for which *Vons* is responsible—that is, conducting investigations into plaintiff's two complaints, declining to discipline Duhm, and transferring plaintiff to another store per her request—does not, as a matter of law, constitute extreme or outrageous conduct. (See *Trerice*, *supra*, 209 Cal.App.3d at p. 883 [court can decide this issue in first instance]; *Fowler*, *supra*, 196 Cal.App.3d at p. 44 [same]; *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499 [jury decides this issue only if reasonable minds may differ].)

Plaintiff's claim for intentional infliction of emotional distress *against Duhm*, however, raises triable issues of material fact. Because, as we have concluded above, plaintiff's claim for sexual harassment against him survives, that actionable, underlying conduct forms the basis of plaintiff's claim for intentional infliction of emotional distress against Duhm. Her claim against him therefore is not barred by the exclusive remedy provisions of the workers' compensation law. Further, there are, at a minimum, triable issues of material fact regarding whether Duhm's harassment of plaintiff was sufficiently extreme and outrageous. We accordingly reverse summary adjudication of

32

plaintiff's intentional infliction of emotional distress claim as against Duhm and remand that claim for further proceedings.

## IV. Wrongful Constructive Discharge

To prevail on a claim for wrongful termination in violation of public policy, a plaintiff must establish: "'(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm.'" (*Nosal-Tabor v. Sharp Chula Vista Medical Center* (2015) 239 Cal.App.4th 1224, 1234-1235.) An employer "terminates" a plaintiff's employment either by actually firing the employee *or* if the employee resigns but that resignation amounts to a "constructive discharge" because the resignation was "*employer*-coerced, [and] not caused by the voluntary action of the employee or by conditions . . . beyond the employer's control." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1248 (*Turner*); *Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 826-827 (*Vasquez*).) A resignation is "employer-coerced" only if the "employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner*, at p. 1251; accord, *Vasquez*, at p. 826.) "[A]dverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." (*Turner*, at p. 1247.) "'[S]ingle, trivial, or isolated acts'" are generally not sufficient to support a finding of constructive discharge. (*Ibid.*; *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1056.) Although the

question whether conditions were so intolerable as to amount to a constructive discharge is usually one of fact, summary judgment may be appropriate where the plaintiff-employee's decision to resign is unreasonable as a matter of law. (*Vasquez*, at p. 827; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1022.)

The trial court properly granted summary adjudication of plaintiff's claim for wrongful termination in violation of public policy. Because it is undisputed that Vons did not terminate plaintiff, the viability of this claim turns on whether plaintiff's resignation qualifies as a constructive discharge. As a matter of law, it does not. The courts appear to be split over whether the showing of intolerable and aggravated working conditions necessary to show a constructive discharge requires the same showing—or instead an even greater showing—of intolerability and aggravation than is necessary to show an adverse employment action. (Compare *Keeton*, *supra*, 429 F.3d at p. 265 [some adverse employment actions do not "rise to the level" of being constructive discharges] with *Darnell*, *supra*, 731 F.Supp. at p. 1313 [equating the concepts of adverse employment action and constructive discharge].) Because we have concluded that Vons's conduct did not amount to an adverse employment action, however, that conduct cannot constitute a constructive discharge under *either* approach.

Plaintiff responds that we must examine the entire "chain of events" that occurred during her employment at Vons, which shows a "continuous pattern" of "adverse conditions" that "render[ed] the situation intolerable" and hence led to her resignation. For support, she cites *Cloud v. Casey* (1999) 76 Cal.App.4th 895, 903, which held that courts must look beyond

34

the employee's stated reason for resigning and examine the full context leading up to that resignation in assessing the true reason for that resignation.  This argument does not alter our analysis because we have already considered the full context of events leading up to plaintiff's decision to resign—including all of Duhm's conduct, Vons's investigations of that conduct, plaintiff's indication that she would be fine with a different shift in the same store or a transfer to a different store, and plaintiff's expression of a preference for a transfer.  Even with this full spectrum of background facts in mind, plaintiff's resignation still does not constitute a constructive discharge as a matter of law.

## V.     **Punitive Damages**

A jury may award punitive damages upon finding that a defendant is "guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).)  However, punitive damages are not a free-floating remedy; they must be attached to a viable cause of action.  Because we have concluded that all of plaintiff's claims against Vons were properly dismissed on summary adjudication, her prayer for punitive damages against Vons necessarily fails as well.  In contrast, because we have concluded that the dismissal of plaintiff's claims against Duhm for sexual harassment and intentional infliction of emotional distress must be reversed, it follows plaintiff's prayer for punitive damages against Duhm is still viable.

# DISPOSITION

The judgment in favor of Vons is affirmed.  Summary adjudication of plaintiff's claims for harassment and intentional infliction of emotional distress against Duhm is reversed.  The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

36